# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

**JAYNE POTTS, as personal**
**representative of the estates of**
**WILLIAM E. POTTS, MARY POTTS,**
**and ANNA POTTS,**

      **Plaintiff,**

**vs.**                                                  **4:04-CV-074-SPM**

**BUDGET RENT A CAR**
**SYSTEM, INC. and BRAC GROUP, INC.,**

      **Defendants.**
_____/

**BUDGET RENT A CAR CORPORATION**
**and BRAC GROUP, INC.,**

      **Third-Party Plaintiffs,**

**vs.**

**EMPIRE FIRE AND MARINE INSURANCE,**
**a Nebraska corporation,**

      **Third-Party Defendants,**
_____/

## ORDER DENYING IN PART AND GRANTING IN PART
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

      **THIS CAUSE** comes before the Court upon "Defendants Budget Rent a

Car Corporation and BRAC Group, Inc.'s Motion for Summary Judgment" (doc. 284) filed July 18, 2005; the memorandum in support thereof (doc. 285); Plaintiff's response (doc. 293) filed August 2, 2005; the statement of facts (doc. 294); and all associated materials.  For the reasons set forth below, the Court finds the motion must be denied.

## BACKGROUND:

Plaintiff, in her capacity as personal representative, sued a number of parties in this wrongful death action for a fatal accident occurring in a 15-passenger Ford Econoline E-350 van rented from Budget for a vacation trip in Bozeman, Montana.  Plaintiff settled her claims with Ford Motor Company (doc. 280), leaving only Budget entities[1] as defendants.  The third amended complaint (doc. 112) sues Budget for negligence in Count V, alleging that Budget is not only liable for its own wrongdoing, but is also vicariously liable as the principal of franchisee PC Rental.[2]  Defendants raise ten grounds for summary judgment, all of which revolve around the relationships between Budget, PC Rentals, and Plaintiff.

---

[1] "Budget entities" refers to Budget Rent a Car System, Inc.; Budget Rent a Car Corporation; and BRAC Group, Inc.

[2] Plaintiff withdrew Count IV (strict liability), *see* doc. 289, and no issue is raised with respect to Count VII (BRAC Group's liability as successor-in-interest to the bankrupt Budget entities).  Counts I through III were dismissed as part of Plaintiff's settlement with Ford (doc. 280).  Thus, it appears that only Count V is at issue here.

**SUMMARY JUDGMENT STANDARD:**

Federal Rule of Civil Procedure 56(c) provides for entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden the court must view the evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).

The moving party may meet the burden by showing that the non-moving party lacks evidence to support an essential element of the non-moving party's case.  See Riley v. Newton, 94 F.3d 632, 638-39 (11th Cir. 1996).  Once the burden is met, summary judgment cannot be avoided by the non-moving party by simply relying upon the allegations or denials in the pleadings.  See Walker v. Darby, 911 F.2d 1573, 1576-77 (11th Cir. 1990).  Rather, to avoid summary judgment, the non-moving party must point to evidence in the record or additional evidence that could be "sufficient to withstand a directed verdict motion at trial." Id. (citations omitted).  The basic inquiry by the court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 251 (1986).

## APPLICABLE LAW:

Because this case involves parties and conduct in both Florida and

Montana, the Court must first determine which law applies to the instant case

before proceeding to the merits of the summary judgment motion.  A federal

district court sitting in diversity must apply the choice-of-law rules of the forum

state.  Trumpet Vine Inv., N.V. v. Union Capital Partners I, Inc., 92 F.3d 1110

(11th Cir. 1996)(citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496

(1941)).  As the instant suit was filed in Florida, its rules will be applied.

In analyzing a choice of law problem in Florida, the first step is to

determine the nature of the legal issues raised before determining the forum's

choice-of-law rule.  10 FLA. JUR. 2D Conflict of Laws § 1 (2005)(citing Hoffman v.

Ouellette, 798 So. 2d 42 (Fla. 4th DCA 2001)).  Here, Plaintiff has sued Budget

under theories of wrongful death (see doc. 112 at p. 2, ¶ 1) and negligence (id. at

23).  In Florida, actions for wrongful death and actions sounding in tort are both

governed by the "significant relationships" test.  10 FLA. JUR. 2D Conflict of Laws

§ 32 (2005); see also Bishop v. Fla. Specialty Paint Co., 389 So. 2d 999 (Fla.

1980)(receding from lex locus delicti rule in tort actions).

The "significant relationships" test, as set forth in sections 145 and 146 of

the Restatement Second of Conflict of Laws, provides as follows:

**145. The General Principle**
(1) The rights and liabilities of the parties with respect to an issue in

tort are determined by the local law of the state which, with respect
to that issue, has the most significant relationship to the occurrence
and the parties under the principles stated in § 6.
(2) Contacts to be taken into account in applying the principles of §
6 to determine the law applicable to an issue include:
> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicil, residence, nationality, place of incorporation
> and place of business of the parties, and
> (d) the place where the relationship, if any, between the
> parties is centered.

These contacts are to be evaluated according to their relative
importance with respect to the particular issue.

### § 146. Personal Injuries

In an action for a personal injury, the local law of the state where
the injury occurred determines the rights and liabilities of the
parties, unless, with respect to the particular issue, some other
state has a more significant relationship under the principles stated
in § 6 to the occurrence and the parties, in which event the local
law of the other state will be applied.

In most cases, the site of the injury is the "decisive consideration" in establishing

the applicable choice of law.  Murphy v. Thornton, 746 So. 2d 575, 576 (Fla. 1st

DCA 1999)(*citing* Bishop, 389 So. 2d at 1001).  However, there is no shortcut in

making this determination, and each case is fact-specific, requiring application of

each principle outlined in the Restatement.  Brown v. Nat'l Car Rental Sys., Inc.,

707 So. 2d 394, 397 (Fla. 3d DCA 1998).

With the foregoing in mind, the Court now turns to the particular

circumstances present in this case.  Budget is a citizen of Delaware with principal

places of business in New Jersey (doc. 112, p. 3 at ¶ e.) and/or Illinois (doc. 112,

p. 3 at ¶ f.).  Budget also regularly advertises and engages in regular business

transactions in Florida. Plaintiff, a Florida citizen and resident, made reservations in Florida through Budget's website[3] to rent a van for a family vacation in Montana.  Upon her arrival at the Bozeman (Montana) Budget location, Plaintiff signed documents governing the duration and other conditions of the rental.  On July 4, 2002, the date of the accident, Plaintiff and her companions were riding in the van in Interstate 90 near Big Timber, Montana, when the van overturned, killing some occupants and injuring others.

The van was licensed and registered in Montana.  PC Rentals, the Budget franchisee, is headquartered in Montana and does business as "Budget Rent a Car Corporation of Mountain States".  The trip was to begin and end in Montana, with Plaintiff returning the van to the same Bozeman location from which she picked it up.

Although Plaintiff and her family resided in Florida and made the reservation in Florida through Budget's website, the facts recited *supra* demonstrate that Montana has the more significant relationship to the accident and the parties; thus, Montana law must be applied to the issues raised here.

**FACTUAL BACKGROUND:**

On November 27, 1964, Budget Rent a Car Corporation ("BRAC") granted to Budget Rent a Car of Mountain States ("BRAC Mountain States") a distributor license to use the Budget name in a car-rental operation.  Paragraph 11 of that

_____

[3]  Budget argues that its website was not even operated by BRAC (doc. 285-1 at 11).

Master Distributor Agreement ("Master Agreement") (doc. 294, exh. C) specifies that BRAC Mountain States, as Distributor, is an independent contractor and not an agent of Budget.

On May 1, 1972, BRAC Mountain States entered into a "Standard Sublicense Agreement" (doc. 294, exh. D) in which it sublicensed Budget Rent a Car of Bozeman, Montana ("BRAC Bozeman") to operate the rental-car location. That agreement also specifies (in paragraph 12.03(a)) that BRAC Bozeman is an independent contractor and not an agent of either Budget or BRAC Mountain States.

Approximately a year and a half later, on December 30, 1973, a "Consent Agreement for Assignment of Master Distributor Agreement" (doc. 285, exh. E) was executed by Budget; a Nevada partnership called Eklund & Eklund; and Los Compadres, a Wyoming limited liability company.  In that agreement, Eklund & Eklund assigned its right, title and interest to Los Compadres as assignee.[4]

Finally, Los Compadres assigned its right, title and interest in the Budget name and rental operation to PC Rentals, Inc., d/b/a BRAC Bozeman pursuant to a "Consent Agreement–Assignment of Prime License" (doc. 294, exh. B) executed on July 1, 2001.  While the latter two agreements make no specific

---

[4]  The agreement states that Eklund & Eklund, as Assignor, was given the exclusive right to grant sublicenses pursuant to the Master Agreement of 1964.  Although no mention is made in the Master Agreement of Eklund & Eklund, this fact has no bearing on the outcome of the case because Los Compadres ultimately sublicensed to PC Rentals, which is the subject of dispute here.

mention of independent contractor status, assignment of a contract puts the assignee in the same shoes as the assignor with respect to rights and liabilities. Forsythe v. Elkins, 700 P.2d 596, 600 (Mont. 1985).  Thus, PC Rentals is subject to the conditions outlined in the original agreement between BRAC and BRAC Mountain States.

**ANALYSIS:**

The nine remaining grounds for summary judgment[5] all deal in some form or another with the relationship between the parties.  Budget claims that PC Rentals is not its agent, but rather is an independent contractor not subject to Budget's control, thereby relieving Budget of any liability to Plaintiff.  Budget also claims that it did not actually deliver the rental vehicle to Plaintiff and thus cannot be liable to her as a bailor.  Each of the two relationships is examined in turn.

***Relationship Between Budget and PC Rentals***

Budget claims it is not vicariously liable for the acts of its franchisee, PC Rentals, Incorporated, arguing that no principal-agent relationship was present. Budget claims in its motion that "[w]hile Budget Rent a Car Corporation approved some of the contractual agreements between Budget Rent-a-Car Corporation of Mountain States, Los Compadres, LLC and PC Rentals, Inc., it is apparent that these Defendants had no contractual privity directly with PC Rentals, Inc." Additionally, the sublicense agreement specified that the sublicensee would act

_____

[5]  Ground X is moot, as Plaintiff withdrew her strict liability claim (Count IV of the third amended complaint).  *See* doc. 289.

as an independent contractor, not an agent.

However, such declaration does not immunize the franchisor from liability to a third party.  Nichols v. Arthur Murray, Inc., 248 Cal. App. 2d 610 (4th Dist. 1967).  A franchisor may be held vicariously liable for the acts of his franchisees when the relationship between them is one of principal and agent or master and servant, rather than an independent contractor.  Elkins v. Husky Oil Co., 455 P.2d 329 (Mont. 1969).  Evidence such as operating manuals and other materials may be offered to show the franchisor's right to control the franchisee.  Nichols, 248 Cal. App. 2d at 612-13.

The Montana Code contains two sections specifically defining what constitutes an agency relationship.  First, Montana Code section 28-10-101 provides:

> An agent is one who represents another, called the principal, in dealings with third parties.  Such representation is called agency.

Second, Montana Code 28-10-103(1) distinguishes between two types of agency:

> An agency is either actual or ostensible.  An agency is actual when the agent is really employed by the principal.  An agency is ostensible when the principal intentionally or by want of ordinary care causes a third person to believe another to be the principal's agent when that person is not really employed by the principal.

It is crucial to note at this juncture that although the parties treat the terms "independent contractor" and "agent" as mutually exclusive, an independent contractor can also be considered an agent.  According to the Restatement

Second of Agency, cited with approval by the Montana Supreme Court in State v.

Frederick, 676 P. 2d 213, 216 (Mont. 1984):[6]

> "[I]ndependent contractor" is a term which is antithetical to the word "servant", although not to the word "agent". In fact, most of the persons known as agents, that is, brokers, factors, attorneys, collection agencies, and selling agencies are independent contractors as the term is used in the Restatement of this Subject, since they are contractors but, although employed to perform services, are not subject to the control or right to control of the principal with respect to their physical conduct in the performance of the services. However, they fall within the category of agents. They are fiduciaries; they owe to the principal the basic obligations of agency: loyalty and obedience. Some of them also fall within the category of trustees, as in the case of a selling agent who has been given title to the subject matter. Colloquial use of the term excludes independent contractor from the category of agent as a similar use excludes trustee, but in both cases there is an agency if in the transaction which they undertake they act for the benefit of another and subject to his control. Thus, salesmen as a group are divided into servants and non-servants, the latter falling into the class of independent contractors for the purpose of distinguishing them from others for whose physical conduct in the scope of employment the employer is responsible.

RESTATEMENT (SECOND) OF AGENCY § 14N cmt. a (2005).

Conversely,

> A person who contracts to accomplish something for another or to deliver something to another, but who is not acting as a fiduciary for the other, is a non-agent contractor. He may be anyone who has made a contract and who is not an agent. The term is used colloquially to describe builders and others who have contracted to accomplish physical results not under the supervision of the one who has employed them to produce the results.

---

[6]   Montana has utilized the Restatement Second of Agency in determining whether a franchisee is an independent contractor or a servant.  See, e.g., Watts v. Montana Rail Link, Inc., 975 P. 2d 283, 285 (Mont. 1999); Nat'l Farmers Union Property and Casualty Ins. Co. v. General Guaranty Ins. Co., 434 P. 2d 708, 711 (Mont. 1967).

Id. at cmt. b.  Both parties use the term "agent" in its colloquial sense, denoting one who is not an independent contractor.  For clarity's sake, the Court will adopt this usage and define the term "agent" to mean one for whose conduct the principal is responsible.

Under the Restatement, an analysis of the relationship between Budget and PC Rentals must take into account any fiduciary elements present as well as the extent of control exercised by Budget over PC Rentals.

*Fiduciary Elements*

An agent's fiduciary duties to a principal include the duty to account for profits; the duty not to act as an adverse party; the duty not to compete with the principal; and the duty to deal fairly with the principal in all transactions between them.  Id. at § 13 cmt. a.  An examination of the Master Agreement shows that PC Rentals agreed not to engage in any other rental or leasing business during the term of the contract and for five years thereafter (doc. 294, exh. C at 7 ¶10F). Additionally, PC Rentals agreed not to use the Budget name for any other rental or leasing business during the term of the contract and for an unlimited time thereafter (doc. 294, exh. C at 7 ¶10G).  PC Rentals was also required to follow bookkeeping and accounting procedures prescribed by Budget, to open its books for Budget's examination at any time, and to submit detailed monthly reports to Budget (doc. 294, exh. C at 6 ¶10D).

*Degree of Control*

With respect to the amount of control exercised by Budget over PC Rentals, the Master Agreement states, "Except with reference to the requirements by Budget hereunder . . . Budget does not reserve control over the Distributor, its sublicensees or any of its or their employees, subordinates or associates, nor shall Budget have any control over the employment, discharge or compensation received by any employee, subordinate or associate of any Distributor or any of its sublicensees."

A review of the agreement itself reveals the following characteristics: Budget retains all ownership interest in the trade name "Budget Rent-a-Car" and any associated trademarks (doc. 294, exh. C at 1, 2).  PC Rentals is required to conduct its business in a method consistent with the system developed by Budget and is required to strictly comply with the operations manual, which is incorporated by reference into the Master Agreement itself (doc. 294, exh. C at 3 ¶8).  Budget retains the right to approve all sublicenses and any other agreements between PC Rentals and its sublicensees (doc. 294, exh. C at 4 ¶9). Without Budget's approval, the proposed sublicenses and agreements are null and void (doc. 294, exh. C at 4 ¶9).

Budget imposes minimum fleet requirements on PC Rentals, along with a maximum markup dollar amount that may be added to leased vehicles (doc. 294, exh. C at 4 ¶¶9B, 9J).  PC Rentals must agree to accept specified credit cards

and use only rental brochures and literature provided by Budget (doc. 294, exh. C at 6 ¶¶10A, 10C).  PC Rentals is also required to have a specific amount of insurance coverage for its vehicles (doc. 294, exh. C at 6 ¶10E).  Finally, Budget has the right to terminate or repurchase the franchise (doc. 294, exh. C at 6 ¶13).

Additionally, the operating manual governing franchised rental locations recites a host of "musts" that PC Rentals is required to follow in areas ranging from advertising and signage to fiscal responsibility and reporting requirements. For example, PC Rentals must participate in particular promotional programs, commission systems, and advertising campaigns (doc. 294, exh. E at 1-3, 7).  A minimum number of Budget signs must be posted in each rental location (which must be a "freestanding" structure "kept clean, free of visible damage, deterioration or debris") (doc. 294, exh. E at 13-14).  Maximum vehicle age and mileage limits are specified, as are acceptable parameters of body damage (doc. 294, exh. E at 15, 17).

On the other hand, salaries and pay rates are governed only by federal, state and local regulations (doc. 294, exh. E at 25).  No minimum number of employees is specified; rather, Budget only requires a "sufficient number of employees . . . to adequately meet customer demand" (doc. 294, exh. E at 25). The manual does not prescribe particular brands or types of vehicles that PC Rentals must include in its fleet; the only standard is that the vehicles must possess equipment to "meet customer demand and be competitive in the

marketplace" (doc. 294, exh. E at 16).  While Budget notifies its franchisees of promotions and pre-negotiated packages from dealerships, the franchisees are free to act upon or ignore these offers.  Finally, a good number of sections in the manual simply instruct the franchisee to use "best practices" or "best efforts" in various areas of operation (doc. 294, exh. E at 8, 10, 18).

The requirements outlined in both the franchise agreements and the operating manual do not necessarily control the time, method or manner of performance; they could instead be reasonably construed as "a means of achieving a certain level of quality and uniformity within the [Budget] system." *See* McGuire v. Radisson Hotels Int'l, Inc., 435 S.E.2d 51, 53 (Ga. App. 1993).

Lastly, although relating more to the concept of ostensible agency, Plaintiff believed she was dealing directly with Budget.  The website through which she reserved the van appeared to be a Budget website; she signed a written contract displaying Budget's logo; received a Rapid Return document bearing the logo; and presumably she observed Budget signs and uniforms when she arrived at the rental location to pick up the van (doc. 293 at 9).  The damage inspection sheet bears Budget's logo (doc. 294, exh. L), and Plaintiff's credit card was charged by "Budget Rent a Car of Belgrade, MT" with a subheading of "Budget Rent-a-Car" (doc. 294, exh. R).

Consequently, the Court finds that a genuine issue of material fact is raised as to whether Budget's franchisor relationship to PC Rentals immunizes

Budget from liability to Plaintiff.  Summary judgment is denied as to Ground I of Defendant's motion.

### *Relationship Between Budget and Plaintiff*

A bailee has been said to be a species of agent, 8 C.J.S. Bailments § 3 (2005), with the important distinction that a bailee generally has no power to subject the bailor to liability in contract or in tort.  Nat'l Farmers Union Prop. and Cas. Co. v. General Guar. Ins. Co., 434 P.2d 708, 711 (Mont. 1967)(citing RESTATEMENT (SECOND) OF AGENCY § 12 cmt. c).

Here, the crux of Plaintiff's case is an attempt to hold Budget liable for renting her a defective vehicle.  Budget suggests in its motion that PC Rentals is the bailor, arguing that it (Budget) served merely as a broker, permitting Plaintiff to reserve a car through the Budget website and thus enter into a bailment contract with PC Rentals.  Plaintiff, on the other hand, claims that Budget is the bailor simply by virtue of its franchisor status.

Montana has relied on secondary sources in interpreting the law of bailments.  *See* State v. Ahl, 371 P.2d 7 (Mont. 1962); State *ex rel.* Olsen v. Sundling, 281 P.2d 499 (Mont. 1955).  Thus, this Court will do the same.  The term "bailment" can be succinctly defined as "a delivery of goods or personal property in trust [for another]."  8 C.J.S. *Bailments* § 2.  A contract of bailment is "premised upon uninterrupted retention of title in the bailor," id., and creation of such contract "requires that possession and control over the subject property

pass to the bailee."  8A AM. JUR. 2D *Bailments* § 4.  In other words, "possession

of the bailed property is severed from its ownership; the bailor retains general

ownership, while the bailee has lawful possession or custody for the specific

purpose of the bailment."  Id. at § 15.

In the case at bar, the subject property is the Ford Econoline E-350 van

rented by Plaintiff and her family.  That van was not owned by Budget; it was

purchased by PC Rentals and titled in its name, as were the other vehicles in PC

Rental's fleet.  This is evidenced by the Budget operating manual, which requires

franchisees to "acquire and maintain" a fleet of vehicles for rental (doc. 294, exh.

E at 15, §V.A.2.); to inspect and repair those vehicles (doc. 294, exh. E at 17,

§V.C.2.); to complete any recall notification forms; and to notify the manufacturer

when vehicles are disposed of.  (doc. 294, exh. E at 17, §V.C.2.).  Paragraph 5J

of the Master Agreement sets different per-vehicle fees depending on whether

the franchisee purchases or leases the vehicles in its fleet, and paragraph 6

requires that the franchisee make its invoices and/or lease agreements available

for Budget's inspection.  Furthermore, PC Rental's corporate representative

confirmed at deposition that PC Rentals actually purchased the vehicles for its

use, sometimes taking advantage of deals negotiated by Budget with various

manufacturers (doc. 294, exh. H at 3).

Because Budget did not possess legal title to the van, it is incapable as a

matter of law of entering into a bailment contract with Plaintiff.  Thus, summary

judgment as to Grounds II through IX of the motion must be granted.

As discussed *supra*, the record does present a disagreement as to whether PC Rentals is an agent of Budget or an independent contractor sufficient to require submission of the issue to a jury.  Accordingly, summary judgment as to Count V, the sole remaining count of the complaint, is granted in part and denied in part.  It is

**ORDERED AND ADJUDGED** as follows:

1.     Summary judgment as to Count V is *granted* with respect to Grounds II through IX of Defendant's motion as they relate to a bailor-bailee relationship between Budget and Plaintiff.

2.     Summary judgment as to Count V is *denied* with respect to Ground I of Defendant's motion as it relates to the principal-agent/ independent contractor status of the relationship between Budget and PC Rentals.

3.     Defendant's motion to strike portions of the summary judgment record (doc. 297) is *granted*, as the portions in question (Exhibit A of doc. 293 and Exhibits G, I, N, O, P and T of doc. 294) relate to the safety of the van and are not relevant to the agency issues

ruled upon by the Court in this order.

**DONE AND ORDERED** this <u>fourteenth</u> day of November, 2005.

<u>  s/ Stephan P. Mickle          </u>
Stephan P. Mickle
United States District Judge

/pao